**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RICKY A. LOCKWOOD,

*Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

*Defendant*.
_________________________________/

CASE NO. 2:18-CV-12589

HON. SEAN F. COX
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION ON PETITIONER'S MOTION FOR ATTORNEY FEES (ECF No. 21.)**

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion for an award of attorney fees under 42 U.S.C. § 406(b)[1] be **GRANTED**, and Petitioner be awarded $5,500.

## II. REPORT

### A. Introduction and Background

On May 1, 2015, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits ("DIB") in addition to an application for Title XVI Supplemental Security Income benefits ("SSI"). (ECF No. 11-2, PageID.40; ECF No. 11-5, PageID.212, 219.) Plaintiff's application was denied at the initial level, (ECF No.

[1] While this section is applicable specifically to Title II Disability Insurance benefits, this section is made applicable to Plaintiff's Title XVI Supplemental Security Income case by 42 U.S.C. § 1383(d)(2)(A). ("The provisions of section 406 of this title . . . shall apply to this part to the same extent as they apply in the case of subchapter II . . . .")

11-3, PageID.109, 121; ECF No. 11-4, PageID.126), by the administrative law judge ("ALJ") (ECF No. 11-2, PageID.53), and by the Appeals Council. (*Id.* at PageID.31.) Plaintiff filed for judicial review of the claim on October 25, 2016, (ECF No. 1), and later moved for summary judgment (ECF No. 14.) The District Court granted Plaintiff's motion and remanded the matter to the Commissioner who ultimately awarded benefits to Plaintiff. (ECF No. 19.) Plaintiff's Counsel, Matthew Taylor ("Petitioner"), did not move for attorney fees under the Equal Access to Justice Act.

Plaintiff and Petitioner entered into a two-tiered fee agreement. (ECF No. 21-4, PageID.843.) Plaintiff and Petitioner agreed that if Plaintiff was awarded benefits "at or before the second hearing by an [ALJ] without the claim going to Federal Court," then Plaintiff would pay Petitioner "the lesser of" twenty-five percent of his past-due benefits or $6,000. (*Id.*) If Plaintiff's claim was successful after an appeal to federal court, then Plaintiff would pay Petitioner twenty-five percent of his past-due benefits. (*Id.*)

After receiving a favorable judgment from the ALJ on remand, Plaintiff received a notice of award granting him past-due DIB benefits. (ECF No. 21-2, PageID.833–34.) The notice of award provided that Plaintiff was tentatively entitled to $52,779.50; however, the notice stated that if Plaintiff subsequently received SSI benefits, then Plaintiff's DIB benefits could be reduced by an amount equal to his SSI benefits. (*See id.* at PageID.834, 836.) Less than a week later, Petitioner petitioned this Court for $5,500 in attorney's fees. (ECF No. 21, PageID.825.)

On August 19, 2021, Plaintiff was awarded $4,764.00 in past-due SSI benefits. (ECF No. 25-2, PageID.878.) Petitioner was granted $7,694.87 in attorney's fees by the

ALJ for his work at the administrative level on August 31, 2021. (ECF No. 25-4, PageID.885.) On September 20, the Commissioner filed a response to Petitioner's petition for attorney's fees, arguing that fees were premature because the Commissioner had not yet calculated Plaintiff's net DIB benefits after deducting his SSI benefits. (ECF No. 24, PageID.851–54.) However, on September 23, Plaintiff's past-due DIB benefits were reduced by $4,764.00 to account for Plaintiff's SSI benefits. (ECF No. 25-3, PageID.881.) Petitioner replied to the Commissioner's motion on September 29, 2021. (ECF No.25, PageID.875.)

**B. Legal Standards**

"The prescriptions set out in [section] 406(a) and [subsection] (b) establish the exclusive regime for obtaining fees for successful representation of Social Security benefits claimants." *Gisbrecht v. Barnhart*, 535 U.S. 789, 795–96 (2002). Section 406(a) addresses payment for representation in administrative proceedings before the Commissioner, whereas section 406(b) deals with payment for representation in court. 42 U.S.C. § 406(a)–(b) (2012).

Under § 406(a)(A), where a claimant is entitled to past-due benefits, a fee may be paid to the claimant's representative for services rendered at the administrative level. If the representative worked for a contingency, then that fee may not exceed the lesser of twenty-five percent of the amount of past-due benefits, or $6,000. 42 U.S.C. § 406(a)(2)(A)(ii)(I)-(II); Maximum Dollar Amount in the Fee Agreement Process, 74 Fed. Reg. 6080–02 (Feb. 4, 2009); *see Gisbrecht*, 535 U.S. at 794–95. Although contingency

fees at the administrative level are generally capped at $6,000, a claimant's representative may petition the ALJ to award fees in excess of the $6,000 cap. 42 U.S.C. § 406(a)(3).

Under § 406(b), where a claimant is "represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation." 42 U.S.C. § 406(b)(1)(A). However, that award must not exceed "[twenty-five] percent of the total of the past-due benefits." *Id.* Notably, unlike awards for work performed at the trial level, awards for work before the district court are not capped at $6,000. *See id.*

The Sixth Circuit has determined that fees awarded under § 406(a) and § 406(b) are to be considered separately, such that a claimant's attorney who represents the claimant both before the Commissioner and before a court "may receive total fees exceeding twenty-five percent of the claimant's benefits award." *Booth v. Comm'r of Soc. Sec.*, 645 F. App'x 455, 457 (6th Cir. 2016).

While fees are capped at twenty-five percent, the ALJ and the district court must award a fee that is "reasonable." 42 U.S.C. § 406(b)(1)(A). Thus, while the twenty-five percent cap is used "as a starting point for the court's analysis, . . . it is not to be viewed as *per se* reasonable." *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989). Because the twenty-five percent cap is the "starting point for the court's analysis . . .," the Court generally cannot calculate appropriate attorney's fees without first being able to calculate the cap. *Higdon v. Comm'r of Soc. Sec.*, No. 1:15-cv-458, 2017 WL 1489221, at *3, n.1 (S.D. Ohio Apr. 25, 2017) ("[T]he Court must know the net amount of past-due benefits in order to calculate the attorney fee award."); *see Rodriguez*, 865 F.2d at 746.

The twenty-five percent cap is derived from a claimant's net total past-due benefits. *Baker v. Bowen*, 839 F.2d 1197, 1199-1201 (6th Cir. 1988). Under 42 U.S.C. § 1320a-6 (2012), "when a claimant is awarded benefits under either [Title II or Title XVI] and later receives a retroactive award of benefits under the other, the retroactive award will be reduced by the amount received under the other title." *Guadamuz v. Bowen*, 859 F.2d 762, 764 (9th Cir. 1988). In other words, a claimant cannot accumulate benefits under both SSI and DIB. The cap on an attorney's fees is derived from the claimant's final past-due benefits after they are adjusted for this "offset." *Detson v. Schweiker*, 788 F.2d 372, 376 (6th Cir. 1986) ("[T]he amount of past-due benefits available for calculation of the attorney's fees withholding amount under § 406(b)(1) is the total retroactive benefits reduced by the SSI windfall offset: the net amount of past-due benefits.").

**C.     Analysis**

  **1.     The Timeliness of the Commissioner's Response**

Although filed more than three weeks late, the Commissioner asks this Court to consider its response to Petitioner's motion. Federal Rule of Civil Procedure 6(b)(1)(B) provides that were a party moves for the court to accept a filing after the applicable deadline, "the court may, for good cause, extend the time . . . if the party failed to act because of excusable neglect." The standard for determining whether a party's neglect was excusable is an "equitable" one that considers:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 522, 524 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993)). "'[E]xcusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Howard v. Nationwide Prop. and Casualty Ins. Co.*, 306 F. App'x 265, 267 (6th Cir. 2009).

Here, the Commissioner explained that the lead attorney in this matter was replaced by another attorney "in late July"—almost a month before the due date for the response on August 25. (ECF No. 25, PageID.850.) However, the new lead attorney "neglected to ensure that a notice of appearance was filed on his behalf." (*Id.*) This excuse is far from impressive as the delay was completely "within the reasonable control of the" Commissioner. *See Nafziger*, 467 F.3d at 522. Nonetheless, in consideration of the remaining factors, I find that the Commissioner's neglect was excusable.

Most importantly, the Commissioner's neglect did not prejudice Petitioner. This Court has an independent duty to evaluate the merits of Petitioner's motion and it is not limited to the arguments raised by the Commissioner. The Commissioner's response is essentially persuasive authority intended to guide the Court's decision. *See United States v. Vargas*, 961 F.3d 566, 577 (2d Cir. 2020) ("A motion, then, generally speaking, is a *request* made by a party for a court to take some action that the party desires the court to take; it is not usual that the mere filing of a "motion" *compels* such action."). Notwithstanding the presence, or absence, of any response, the Court has an independent duty to assess Plaintiff's motion and address the applicable legal issues, including the

issues raised by the Commissioner. *See Melendez v. United States*, 518 U.S. 120, 126 (1996) (describing motions as mere "application[s]" for the court to take some action; *Leslie v. Attorney Gen. of the United States*, 611 F.3d 171, 174 n.2 (3d Cir. 2010); *Sammons v. Baxter*, No. 1:06-cv-137, 2007 WL 325752, at *2 (E.D. Tenn. Jan. 31, 2007) (reasoning that a defendant would not be prejudiced by the plaintiff's late response to defendant's motion for summary judgment because, even if defendant's motion was unopposed, "the Court must still examine the record and determine whether . . . [the movant] is entitled to summary judgment as a matter of law"). The Commissioner's arguments in its response cannot be waived—this is not a situation where, for example, a timely response may affect the availability of certain affirmative defenses. Moreover, I ultimately conclude that the arguments raised by the Commissioner lack merit, and neither Plaintiff nor Petitioner object to the Court considering the Commissioner's response. (ECF No. 25, PageID.872.)

Additionally, the Commissioner's late response was not made in bad faith, and the length of the delay was relatively short and had no impact on judicial proceedings. *Cf. Howard*, 306 F. App'x 265, 267 (finding inexcusable neglect where a good faith error had a "significant impact of judicial proceedings"); *Mendoza v. Pollard*, No. 3:20-cv-0847, at *2 (S.D. Cal. Sept. 23, 2020) (finding excusable neglect where the "[p]etitioner ha[d] not asserted any prejudice from Respondent's late response[;] . . . the length of delay was not lengthy, about three weeks[;] . . . and there was no evidence of bad faith"). Indeed, the Commissioner's response had been received by the time I issued my recommendation.

Accordingly, I suggest that this Court consider the Commissioner's late response because the Commissioner's neglect was excusable.

**2. Whether Attorney's Fees Would Be Premature.**

Petitioner asks this Court to award him $5,500.00 in attorney's fees. (ECF No. 25, PageID.825.) He argues that he is entitled to twenty-five percent of Plaintiff's gross DIB benefits before the Commissioner applied the SSI offset to Plaintiff's DIB award. (*Compare* ECF No. 21, PageID.824, *with* ECF No 21-2, PageID.834, 836.) Before applying the offset, the Commissioner awarded Plaintiff $52,779.50 in DIB benefits and $4,764 in SSI benefits and withheld twenty-five percent of Plaintiff's gross past-due benefits, or $14,385.87, for attorney's fees. (ECF No. 21-2, PageID.836; ECF No. 25-2, PageID.878.) Petitioner was awarded $7,694.87 by the ALJ for his work at the administrative level,[2] and he requests that this Court grant him the remainder of the withheld attorney's fees, less those withheld from Plaintiff's SSI benefits, and those already awarded at the administrative level, amounting to $5,500. (ECF No. 21, PageID.824–25; ECF No. 25, PageID.873; ECF No. 25-4, PageID.885)

The Commissioner responds that an award of benefits is premature because the Commissioner has not yet calculated Plaintiff's net past-due benefits. (ECF No. 24, PageID.851–55.) Because attorney's fees are calculated based on the total net past-due benefits, after deducting the SSI offset, the Commissioner argues that this Court cannot

[2] Although this fee surpasses the $6,000 cap set by § 406(a), Petitioner explains that he petitioned the ALJ for a fee in excess of the cap. (ECF No. 21, PageID.825); *see* 42 U.S.C. § 406(a)(3) (providing that the ALJ may award fees in excess of the cap if petitioned by counsel).

determine a "reasonable" fee without first being able to calculate the maximum allowable fee for the attorney's work in the district court. *Id.* Indeed, a Court who awards benefits based on a plaintiff's gross past-due benefits, unadjusted for the SSI offset, risks awarding attorney's fees that exceed the twenty-five percent cap. *See Higdon*, 2017 WL 1489221, at *3, n.1.

The Commissioner is correct that the twenty-five percent cap on attorney's fees must be based off of the total net past-due benefits. *Detson*, 788 F.2d at 376. However, the Commissioner has already determined Plaintiff's SSI offset and final net past-due benefits. (ECF No. 25-2, PageID.878; ECF No.25-3, PageID.881.) Therefore, I suggest that this Court may award attorney's fees.

While it would not be premature to award attorney's fees, I note that Petitioner incorrectly calculated his maximum fee. Under the offset provision, Plaintiff's subsequent SSI award is subtracted from his gross DIB benefits, not his total benefits. 42 U.S.C. § 1320a-6. This distinction is critical because here, Petitioner waived any fees derived from Plaintiff's SSI award. (ECF No. 21, PageID.824; ECF No. 25, PageID.873.) Thus, to calculate Petitioner's maximum fees, the Court starts by subtracting the SSI offset ($4,764) from Plaintiff's gross DIB benefits ($52,779.50). At this point, the Court would typically add back Plaintiff's SSI benefits ($4,764) for a total of $52,779.50 of past-due benefits that are subject to the twenty-five percent cap, and permit Counsel to request up to a quarter of the benefits, or $13,194.88, in fees. However, Petitioner waived his right to collect fees from Plaintiff's SSI award. (ECF No. 21, PageID.824; ECF No. 25, PageID.873.) Thus,

Petitioner's foregone SSI fees cannot be added back to compensate for the offset. Accordingly, Petitioner's maximum fees are $12,003.88.

Nonetheless, Petitioner argues that he is entitled to a fee based off Plaintiff's gross DIB because the amount of Plaintiff's gross DIB is equal to his net total benefits after the SSI offset. (*See* ECF No. 25, PageID. 873–74.) However, because the SSI offset reduced Plaintiff's DIB benefits, Petitioner required the fee from Plaintiff's SSI benefits to compensate for the loss from the offset. Therefore, because Petitioner waived his fees from Plaintiff's SSI benefits, Petitioner cannot compensate for the offset applied to Plaintiff's DIB benefits.

Further, although Petitioner could have requested twenty-five percent of Plaintiff's net total past-due benefits from the District Court, in addition to his award from the ALJ, Petitioner entered into a fee agreement for only a *quarter* of Plaintiff's total past-due benefits. (ECF No. 21-4, PageID.843); *see Booth*, 645 F. App'x at 457. Thus, his request for only $5,500 shall be respected, because accounting for Petitioner's award from the ALJ, any greater award would surpass Petitioner's bargained-for fee under his agreement with Plaintiff. *See Willis v. Comm'r of Soc. Sec.*, No. 1:10-cv-594, 2013 WL 4240835, at *4 (S.D. Ohio Aug. 14, 2013); *cf. Ballatore v. Comm'r of Soc. Sec.*, No. 11-15335, 2015 WL 5830836, at *8–9 (E.D. Mich. Aug. 5, 2015) (citing *Gisbrecht*, 535 U.S. at 807) (reasoning that an attorney's fee agreement for "one quarter of the 'money [his client] get[s]'" did not permit the attorney to collect one quarter of his client's past-due benefits from the district court in addition to the fees he was awarded by the ALJ).

**3. Reasonableness of Counsel's Requested Fee**

The Court has an independent duty to ensure the fee's reasonableness, even if the parties agree that the requested fee is appropriate. *See Gisbrecht*, 535 U.S. at 807; *Tibbetts v. Comm'r of Soc. Sec.*, No. 1:12–cv–894, 2015 WL 1637414, at *3 (S.D. Ohio Apr. 13, 2015) (adopting Report & Recommendation). Fee agreements are accorded a "rebuttable presumption" of reasonableness that is "overcome only by 'special circumstances.'" *Ballatore*, 2015 WL 5830836, at *3 (quoting *Rodriguez*, 865 F.2d at 746). These two special circumstances include: "(1) where the attorney was improperly ineffective; and (2) "situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended." *Id.* at *4 (citing *Rodriguez*, 865 F.2d at 746–47).

The first circumstance is not seriously at issue in this case. Counsel is improperly ineffective where he or she needlessly prolongs the proceedings to accumulate past-due benefits that will serve as the base of the attorney's contingency fee. *Rodriguez*, 865 F.2d at 746–47 ("Unfortunately, because the award is based on the amount of "past-due" benefits which increase as time passes, a lawyer is almost always financially served by delay in a final decision on the claim."). There is no indication that Petitioner needlessly prolonged the proceedings in this case. Indeed, Petitioner promptly filed his request for attorney's fees on August 5 after Plaintiff's notice of award was mailed on July 31. (ECF No.21, PageID.826; ECF No 21-2, PageID.831); *cf. Willis v. Comm'r of Soc. Sec.*, No. 1:10-cv-594, 2014 WL 2589259, at *4 (S.D. Ohio June 10, 2014).

Under the second circumstance, Petitioner's fee would not constitute a windfall. "[A] windfall can never occur when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market." *Hayes v. Sec'y of Health & Human Servs.*, 823 F.2d 418, 422 (6th Cir. 1990). In other words, fees that are under twice the standard hourly rate are *per se* reasonable. *Id.*

Even fees above this "floor" are reasonable if the attorney did not receive a disproportionately high fee in relation to the amount of work he or she performed. *Id.* For example, "a maximum award is merited 'for extensive effort on the part of counsel who have overcome legal and factual obstacles to the enhancement of the benefits awarded to his client.'" *Ballatore*, 2015 WL 5830836, at *4 (quoting *Rodriguez*, 865 F.2d at 747). Conversely, where an "attorney relied on boilerplate pleadings or 'no legal research is apparent'" a deduction may be appropriate. *Id.* (quoting *Rodriguez*, 865 F.2d at 747).

Here, Petitioner's $5,500 fee for his work before the District Court is *per se* reasonable. This Court frequently uses the Michigan State Bar's study of billing rates to establish the standard fee in a given market. *E.g.*, *id.* at *9; *Drenning v. Comm'r of Soc. Sec.*, No. 12–13470, 2014 WL 4705133, at *4 (E.D. Mich. Sept. 21, 2014); *Hamilton v. Comm'r of Soc. Sec.*, No. 09-11553, 2011 WL 10620198, at *6 (E.D. Mich. Aug. 15, 2011); *Fraser v. Comm'r of Soc. Sec.*, No. 05-60164, 2008 WL 2949222, at *2 (E.D. Mich. Jul. 30, 2008). Petitioner requests an hourly rate of $201.83 for his work before the District Court. (*See* ECF No. 21-3, PageID.841.) By comparison, in Saginaw, where Counsel's

office is located, the average and median hourly billing rates are $241 and $245, respectively. State Bar of Michigan, *2020 Economics of Law Practice: Attorney Income and Billing Rate Summary Report* 9 (2014). For all public benefits attorneys in in Michigan, the average and median hourly billing rates are $208 and $175, respectively. *Id.* at 7. Petitioner's requested hourly rate falls well below twice the amount of any relevant standard market rate.

Further, even if Petitioner's requested fee was not *per se* reasonable, I suggest that it still does not constitute a windfall. Petitioner spent twenty-seven and a quarter hours of work on Plaintiff's case before the District Court—well within the average number of hours expended by most social security attorneys. (ECF No. 21-3, PageID.841); *see Short v. Comm'r of Soc. Sec.*, No. 1:12cv574, 2015 WL 4465189, at *5 (S.D. Ohio Jul. 21, 2015); *Castaneda v. Comm'r of Soc. Sec.*, No. 2:10-CV-13724, 2013 WL 2285448, at *2 (E.D. Mich. May 12, 2013) ("A careful review of similar cases filed before this court shows that other counsel typically expended between [twenty-five] to [thirty-five] hours on Social Security disability cases like this one."). Petitioner's motion for summary judgment, although ultimately successful, did not address any particularly complex legal or factual issues. (*See* ECF No. 14.) However, while Petitioner did not perform any unusually difficult or extensive work before the District Court, his fee is comparably unremarkable. Attorneys who work for contingencies assume the risk that they will lose their case and receive no compensation for their time and expenses. *See Rodriguez*, 923 F.2d at 422 (recognizing that "social security attorneys are successful in approximately [half] of the cases they file in the courts"). Indeed, "[i]t is the nature of the beast" that "[c]ontingent

fees generally overcompensate in some cases and undercompensate in others. *Royzer v. Sec'y of Health & Human Servs.*, 900 F.2d 981 (6th Cir. 1990). Accordingly, attorneys working for contingencies may charge "large hourly rates" to account for their risk of loss. *Id.*; *see also* Richard A. Posner, Economic Analysis of Law 614 (7th ed. 2007).

Yet, Petitioner's requested fee hardly accounts for the risk he undertook by working for a contingency. Indeed, by most measures, his fee falls below the standard hourly rate for attorneys in his market. *See* State Bar of Michigan, *2020 Economics of Law Practice: Attorney Income and Billing Rate Summary Report* 7, 9 (2014). Accordingly, because his requested fees are reasonable, I suggest that Petitioner be granted $5,500 in attorney's fees for his work before the District Court.

**D. Conclusion**

For the reasons set forth above, **IT IS RECOMMENDED** that the motion for attorney fees under 42 U.S.C. § 406(b) be **GRANTED**, and that attorney fees be awarded to Plaintiff's attorney in the amount of $5,500.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," *et cetera*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *et cetera*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 27, 2021               S/ PATRICIA T. MORRIS
                                     Patricia T. Morris
                                     United States Magistrate Judge